1

2

3

4

5

6

7

8                          **UNITED STATES DISTRICT COURT**

9                          **CENTRAL DISTRICT OF CALIFORNIA**

10

11   REYNALDO N. ROSAS,                    Case No. SACV 13-1958 SS

12                  Plaintiff,

13         v.                              **MEMORANDUM DECISION AND ORDER**

14   CAROLYN W. COLVIN, Acting
     Commissioner of Social
15   Security,
                     Defendant.
16

17

18

19                                  **I.**

20                             **INTRODUCTION**

21

22        Reynaldo N. Rosas ("Plaintiff") seeks review of the final

23   decision  of  the  Commissioner  of  the  Social  Security

24   Administration (the "Commissioner" or the "Agency") denying his

25   application for a period of disability and Disability Insurance

26   Benefits.  The parties consented, pursuant to 28 U.S.C. § 636(c),

27   to the jurisdiction of the undersigned United States Magistrate

28   Judge.   For  the  reasons  stated  below,  the  decision  of  the

Commissioner is REVERSED and this action is REMANDED for further proceedings.

**II.**

**PROCEDURAL HISTORY**

On May 2, 2007, Plaintiff filed an application with the Agency for a period of disability and Disability Insurance Benefits ("DIB"). (<u>See</u> Administrative Record ("AR") 328-30, 366-83). Plaintiff alleged a disability onset date of March 6, 2003. (AR 328, 366). Plaintiff based his claim on generalized pain related to a workplace injury, as well as headaches and neck pain following back and shoulder surgery. (AR 185, 187, 369). The Agency denied Plaintiff's claim on June 21, 2007 (AR 244-48), and his subsequent appeal on September 12, 2007. (AR 253-57).

On October 15, 2007, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 258-59). ALJ Helen E. Hesse conducted the hearing on March 18, 2009 (the "First ALJ Hearing"). (AR 175-206). Plaintiff testified through an interpreter and was represented by counsel. (AR 177). Non-examining consulting physician Joseph E. Jensen and vocational expert ("VE") Stephen M. Berry testified. (AR 188-97, 197-205, respectively). On August 27, 2009, the ALJ issued a decision denying benefits. (AR 215-29). On January 20, 2011, the Appeals Council denied Plaintiff's request for review. (AR 230-33).

\\

\\

1    Subsequently, the parties stipulated to a voluntary remand.

2  (AR 234-35).  The parties noted that the ALJ's decision referred

3  to third-party medical records that erroneously appeared in the

4  Administrative Record, requiring expungement, reconsideration of

5  the evidence and a new decision.  (AR 234).  On May 9, 2011, this

6  Court ordered the case remanded for further proceedings.  (AR

7  238).

8

9    The ALJ held a new hearing on January 24, 2012 (the "Second

10  ALJ Hearing").  (AR 139-74).  Plaintiff was again represented by

11  counsel and testified through an interpreter.  (AR 141).  Dr.

12  Jensen testified, as did VE Alan Boroskin.  (AR 146-62, 167-72,

13  respectively).  The ALJ noted that the third-party records had

14  been properly expunged (AR 142-43) and that additional medical

15  exhibits were included in the AR.  (AR 144).  The added exhibits,

16  dated from September 2010 to January 2012, included physicians'

17  treatment notes relating, inter alia, to Plaintiff's existing

18  orthopedic issues as well as to depression and a urinary voiding

19  dysfunction.  (AR 1253-1518).

20

21    On August 13, 2012, the ALJ again reached an unfavorable

22  decision, concluding that Plaintiff retained the ability to

23  perform his past relevant work as a screen assembler.  (AR 37-

24  58).  On September 23, 2013, the Appeals Council denied

25  Plaintiff's appeal.  (AR 15-18).  Plaintiff filed the instant

26  action on December 13, 2013.

27  \\

28  \\

### III.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so,

4

1            the claimant is found disabled.  If not, proceed

2            to step four.

3     (4)  Is the claimant capable of performing his past

4            work?  If so, the claimant is found not disabled.

5            If not, proceed to step five.

6     (5)  Is the claimant able to do any other work?  If

7            not, the claimant is found disabled.  If so, the

8            claimant is found not disabled.

9

10 Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari,

11 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20

12 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

13

14    The claimant has the burden of proof at steps one through

15 four, and the Commissioner has the burden of proof at step five.

16 Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an

17 affirmative duty to assist the claimant in developing the record

18 at every step of the inquiry.  Id. at 954.  If, at step four, the

19 claimant meets her burden of establishing an inability to perform

20 past work, the Commissioner must show that the claimant can

21 perform some other work that exists in "significant numbers" in

22 the national economy, taking into account the claimant's residual

23 functional capacity ("RFC"), age, education, and work experience.

24 Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20

25 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do

26 so by the testimony of a vocational expert or by reference to the

27 Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404,

28 Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock

1  v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant

2  has  both  exertional  (strength-related)  and  non-exertional

3  limitations, the Grids are inapplicable and the ALJ must take the

4  testimony of a vocational expert.  Moore v. Apfel, 216 F.3d 864,

5  869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335,

6  1340 (9th Cir. 1988)).

7

8                                   **IV.**

9                         **THE ALJ'S DECISION**

10

11      The  ALJ  employed  the  five-step  sequential  evaluation

12  process.[1]  At step one, the ALJ found that Plaintiff had not

13  engaged in substantial gainful employment between his alleged

14  onset date of March 6, 2003, and his last-insured date of June

15  30, 2007.  (AR 46).  At step two, the ALJ found that Plaintiff

16  had severe physical impairments, including conditions caused by

17  lumbar  fusion  surgery,  shoulder  surgery,  urethral  stricture

18  repair surgery, hernial repair surgery with subsequent nerve

19  entrapment, spinal fusion surgery, and erectile dysfunction.

20  (Id.).  However, at step three, the ALJ concluded that none of

21  these conditions met the listing requirements under 20 C.F.R.

22  Part 404, Subpart P, Appendix 1.  (AR 47).

23

24      At step four, the ALJ found that Plaintiff had the RFC to

25  perform light work, subject to certain physical restrictions.

26  (Id.).  Of relevance here, the ALJ opined that Plaintiff "could

27  _____

28  [1]    References in this section are to the ALJ's second decision,
   which was issued on August 13, 2012.  (AR 37-58).

                                     6

only reach at or above shoulder level with his upper extremity on an occasional basis." (Id.). The ALJ concluded that Plaintiff remained capable of performing his past relevant work as a screen assembler, because this work "did not require activities precluded by [Plaintiff's] residual functional capacity." (AR 57). Accordingly, the ALJ concluded that Plaintiff was not disabled. (Id.).

**V.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set the decision aside when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence

that detracts from the [Commissioner's] conclusion.'" <u>Aukland</u>, 257 F.3d at 1035 (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).   If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. <u>Reddick</u>, 157 F.3d at 720-21 (citing <u>Flaten v. Sec'y</u>, 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VI.**

**DISCUSSION**

Plaintiff contends that the ALJ's decision contained two errors.   First, Plaintiff asserts that the ALJ acknowledged that Plaintiff was limited to only "occasional reaching at or above shoulder level" with his left arm.   Thus, the ALJ erred when she accepted the VE's conclusion that Plaintiff could perform his past relevant work as a screen assembler which required frequent reaching and handling.   (Memorandum in Support of Plaintiff's Complaint ("Complaint") at 6).   Second, Plaintiff contends that the ALJ erred by failing to "make a finding with regard to [Plaintiff's] ability to speak English." (<u>Id.</u> at 8).   Plaintiff asserts that his past relevant work as a screen assembler requires a level of English proficiency that he does not possess, and "the ALJ must definitively explain why he or she deviates from the [Dictionary of Occupational Titles ("DOT")] language requirements." (<u>Id.</u> at 11).   For the reasons discussed below, the Court finds that the ALJ's decision must be reversed. \\

**A.    The ALJ Erred By Accepting the VE's Conclusions Without Explaining The Discrepancy Between Plaintiff's Physical Limitations And The DOT Description Of Plaintiff's Past Relevant Work**

When a VE "provides evidence about the requirements of a job or occupation, the [ALJ] has an affirmative responsibility to ask about any possible conflict between that . . . evidence and information provided in the DOT." Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *4 (Dec. 4, 2000). The ALJ must resolve the discrepancy before relying on the VE's testimony to support the ALJ's decision. Id. "The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony." Massachi v. Astrue, 486 F.3d 1149, 1153 (9th Cir. 2007). The ALJ may rely on VE testimony that deviates from the DOT description, but must establish that there is a "reasonable explanation for the conflict." Id. at 1154.

Here, the ALJ found that Plaintiff had an RFC to perform light work, but "could only reach at or above shoulder level with his upper extremity on an occasional basis." (AR 47). The ALJ based this finding on an evaluation of Plaintiff's medical records by Dr. Jensen, the non-examining consulting physician, to which she accorded "great weight." (AR 50, 55). The ALJ asked VE Boroskin to consider a hypothetical individual of Plaintiff's age and educational background who could sit, stand or walk six hours out of an eight-hour day, lift twenty pounds occasionally

9

and ten pounds frequently, and frequently use his upper extremities for "gross or fine manipulation," but would be "limited to <u>occasional</u> reaching at or above shoulder level." (AR 168-69) (emphasis added). The VE concluded that the individual could perform Plaintiff's past relevant work. (AR 169).

The VE assigned DOT code 739.684-150 to Plaintiff's past relevant work as a screen assembler.[2] (AR 418). Laborers under this DOT code must be able to reach "[f]requently," which the DOT defines as "from 1/3 to 2/3 of the time." DOT 739.684-150, 1991 WL 680151 (1991). Thus, two conflicts exist in the evidence of record: (1) the VE testified that Plaintiff was capable of performing past work that was precluded by the residual functional capacity the ALJ adopted; and (2) the VE impliedly misstated the reaching requirements of Plaintiff's past relevant work as a screen assembler. Despite these discrepancies, the ALJ did not ask the VE to explain the conflict between his assessment of the first hypothetical and the reaching requirements of DOT code 739.684-150.[3] Similarly, the ALJ did not resolve the conflict between her adopted RFC, which permitted only "occasional" reaching, and her conclusion that Plaintiff could perform his past relevant work, which required "frequent" reaching.

---

[2] In her decision, the ALJ cited DOT code 739.684-010. (AR 57). The DOT assigns this code to "Artificial-Candy Maker," not Screen Assembler. (<u>See</u> DOT 739.684-010, 1991 WL 680116 (1991)). However, the error has no apparent bearing on the present discussion, as both job descriptions require "frequent" reaching.
[3] The VE asserted that his testimony was in fact consistent with the DOT when it was not. (AR 171).

"Although the burden of proof lies with the claimant at step four [of the five-step analysis], the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). The ALJ must examine the claimant's RFC as well as the physical and mental demands of his past relevant work. Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002). Here, the conflict in the evidence undermines the ALJ's conclusions about Plaintiff's ability to perform his past relevant work. Moreover, because the ALJ did not address these discrepancies, the Court cannot determine whether the ALJ fully examined the physical and mental demands of Plaintiff's past relevant work as a screen assembler in light of the DOT specifications for this job. Therefore, the Court must reverse and remand the ALJ's decision for a more complete assessment of Plaintiff's ability to perform his past relevant work or to consider whether other jobs exist that Plaintiff can perform. See Massachi, 486 F.3d at 1154.

**B.    The   ALJ   Failed   To   Address   The   Discrepancy   Between Plaintiff's  Limited  English  Language  Skills  And  The  DOT Description Of Plaintiff's Past Relevant Work**

[T]he best source for how a job is generally performed is usually the [DOT]." Pinto, 249 F.3d at 845. "In order for an ALJ to accept vocational expert testimony that contradicts the [DOT], the record must contain 'persuasive evidence to support the deviation.'" Id. at 846 (9th Cir. 2001) (quoting Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995)). Although "[a]

11

claimant is not <u>per se</u> disabled if he or she is illiterate," an ALJ must still explain her deviation from a DOT description, including one related to language skills.[4]  <u>See</u> <u>id.</u> at 847. Moreover, "[t]he ability to communicate is an important skill to be considered when determining what jobs are available to a claimant," including in assessing "whether a claimant has the residual functional capacity to perform past relevant work."  <u>See</u> <u>id.</u> at 846 (citing SSR 96-8P's requirements for assessing nonexertional capacity).

Under DOT code 739.684-150, a screen assembler must possess "Level 1" language skills.  DOT 739.684-150, 1991 WL 680151 (1991).  The worker should "[r]ecognize meaning of 2,500 (two- or three-syllable) words.  Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers."  <u>Id.</u>  In addition, he should be able to "[p]rint simple sentences containing subject, verb, and object, and series of numbers, names, and addresses," as well as to "[s]peak simple sentences, using normal word order, and present and past tenses."  <u>Id.</u>

In his DIB application, Plaintiff listed Spanish as his preferred language and stated that he could neither read nor understand English.  (AR 369).  Plaintiff answered "No" to the question "Can you write more than your name in English?"  (<u>Id.</u>).

---

[4]  Such an explanation is required even though a claimant's limited English proficiency did not previously interfere with his ability to perform the relevant work.  <u>See</u> <u>Pinto</u>, 249 F.3d at 846.

1    Plaintiff told one of his physicians that he had declined
2    vocational rehabilitation "because he did not speak English."
3    (AR 696).  At the First ALJ Hearing, Plaintiff testified, in
4    Spanish, that he had "learned a little bit of English" while
5    sporadically attending school after immigrating to the United
6    States.  (AR 184).  However, he only attended English classes
7    "two times."  (Id.).  Plaintiff spoke through interpreters at
8    both ALJ hearings (see AR 141, 177), and addressed the ALJ in
9    English only once.[5]  (AR 188).  Based on the evidence in the
10   administrative record, Plaintiff possesses only limited English
11   language skills.

13       The ALJ asked VE Boroskin to consider the employment outlook
14   for an individual with "basic English" skills.  (AR 168).
15   Defendant argues that "substantial pieces of evidence" in the
16   administrative record reasonably lead to the conclusion that
17   Plaintiff could speak "basic English."  (See Memorandum in
18   Support of Defendant's Answer at 7).  The ALJ did not define
19   "basic English" during the hearing, however, and did not explain
20   how this level of proficiency compares with the DOT's Level 1
21   language skills.  (See AR 37-66, 168-69).  The ALJ's decision
22   makes no reference to Plaintiff's limited language skills and
23   does not explain the apparent deviation from the DOT
24   specification for Plaintiff's past relevant work, as required.
25   Pinto, 249 F.3d at 847.  Therefore, the Court cannot determine

---

27   [5]   On that occasion, during the First ALJ Hearing, Plaintiff
28   spoke only one word in English.  (See AR 188) ("Q Okay. Anything
     else you do for pain relief?  A (In English) No.").

13

1   whether there is a sufficient basis for the ALJ's conclusion that

2   Plaintiff can perform his past work as a screen assembler "both

3   as [Plaintiff] actually performed that job, and as it is

4   generally performed in the national economy." (AR 57).

5

6   Remand for further proceedings is appropriate where

7   additional proceedings could remedy defects in the Agency's

8   decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.

9   2000).  Accordingly, the Court remands this action to the Agency

10   to determine whether sufficient evidence supports the ALJ's

11   conclusion that Plaintiff is capable of finding and performing

12   his past relevant work or whether other jobs exist that Plaintiff

13   can perform.

14

15                                  **VII.**

16                              **CONCLUSION**

17

18   Consistent with the foregoing, IT IS ORDERED that judgment

19   be entered REVERSING the decision of the Commissioner and

20   REMANDING this matter for further proceedings consistent with

21   this decision.

22

23   DATED:  January 26, 2015

24

25                                  /S/
                              SUZANNE H. SEGAL
26                            UNITED STATES MAGISTRATE JUDGE

27

28   **THIS DECISION IS NOT INTENDED FOR PUBLICATION IN LEXIS, WESTLAW**
     **OR ANY OTHER LEGAL DATABASE.**